**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:11cv194**

| | |
|---|---|
| SOUTHERN CONCRETE<br>PRODUCTS, INC., )<br><br>Plaintiff, )<br><br>vs. )<br><br>ARCO DESIGN/BUILD, INC., )<br>and INDUSTRIAL CONCRETE )<br>CONSTRUCTION, INC., )<br><br>Defendants. )<br>_____ ) | <u>MEMORANDUM OF</u><br><u>DECISION AND ORDER</u> |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss or Stay and Compel Arbitration [Doc. 5] and the Plaintiff's Motion to Stay Arbitration [Doc. 10].

## I.     PROCEDURAL BACKGROUND

On July 7, 2011, the Plaintiff Southern Concrete Products, Inc. ("SCP" or "Plaintiff") filed this action against ARCO Design/Build, Inc. ("ARCO") and Industrial Concrete Construction, Inc. ("ICC") (collectively, "Defendants") in the General Court of Justice, Superior Court Division, for Cleveland County, North Carolina.  [Complaint, Doc. 1-1].  The Defendants removed the action to this

Court on August 4, 2011, on the basis of diversity jurisdiction. [Notice of Removal, Doc. 1].

On August 11, 2011, the Defendants filed the present Motion to Dismiss or Stay and Compel Arbitration. [Doc. 5]. The Plaintiff filed a Response in Opposition to the Defendants' Motion on August 29, 2011. [Doc. 7]. The Defendants filed a Reply Memorandum on September 6, 2011. [Doc. 8].

Thereafter, the Plaintiff filed a Motion to Stay Arbitration pending the resolution of the Defendants' Motion to Dismiss or Stay and Compel Arbitration. [Doc. 10]. The Defendants filed a Response, indicating that they do not oppose the Plaintiff's request for a stay. [Doc. 11].

Having been fully briefed, these matters are now ripe for disposition.

## II.   STANDARD OF REVIEW

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 862 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard

2

requires a plaintiff to demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted).

In considering a motion to dismiss, the Court must accept the well-pled factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). The complaint, however, must contain "more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. 1955. "To discount such unadorned conclusory allegations, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Francis, 588 F.3d at 193 (quoting Iqbal, 556 U.S. at ___, 129 S.Ct. at 1950). "This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955).

3

III.   **FACTUAL BACKGROUND**

Viewing the well-pled factual allegations in the Complaint as true and construing them in the light most favorable to the Plaintiff, the following is a summary of the relevant facts.

A.   **The Clear Water Project**

On July 1, 2010, Clearwater Paper Corporation ("Clearwater") entered into a Construction Contract with Defendant ARCO for the construction of a new 672,000 square-foot manufacturing facility and warehouse in Shelby, North Carolina (the "Clear Water Project").  [Complaint, Doc. 1-1 at ¶¶7, 8]. ARCO retained Defendant ICC to provide concrete for the Clear Water Project under the terms of a subcontract agreement.  [Id. at ¶11].  ICC in turn retained Plaintiff SCP to provide the mix design and to mix the concrete needed for the Clear Water Project under the terms of a sub-subcontract (i.e. second tier subcontract) agreement (the "Clear Water Contract").  [Id. at ¶13; Ex. A to Complaint, Doc. 1-2 at 1].  The Clear Water Contract provides, in pertinent part, as follows:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be finally resolved by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules .... The arbitration will be conducted in the city or county of St. Louis .... The arbitrators

4

shall decide the dispute in accordance with the laws
of the state where the Project is located.

[Complaint, Doc. 1-1 at ¶15; Ex. A to Complaint, Doc. 1-2 at §4.9].[1]

SCP mixed, tested, and provided the concrete for the two pours of the slab that occurred at the Clear Water Project between October 7 and 9, 2010. [Complaint, Doc. 1-1 at ¶17]. After the first pour, on October 8, 2010, ARCO and ICC learned that a 22,500 square foot section of the slab had delaminated. ICC contacted SCP about the delamination but did not request any corrective action. [Id. at ¶28]. Other than the delamination issue, there was no indication at that time of any potential issues with the concrete during the pours or during the finishing, and no such problems were reported to SCP personnel. [Id. at ¶27].

On April 13, 2011, six months after the pours were completed, ICC notified SCP of potential high air content and other problems with the

---

[1]Generally, the Court considers only the pleadings when ruling on a Rule 12(b)(6) motion. See Fed. R. Civ. P. 12(d). If "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Id. In addressing a 12(b)(6) motion, however, the Court may consider documents that are "integral to and explicitly relied on in the complaint" so long as the authenticity of such documents is not disputed. See American Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). In the present case, the authenticity of the documents referenced in the Complaint and attached thereto as exhibits is not in dispute. Accordingly, the Court may consider these documents in ruling on the Defendants' Motion without converting this to a summary judgment proceeding.

5

concrete. [Id. at ¶29]. This notice did not state in any way that there was a "defect" as defined in the Clear Water Contract or that SCP was required to perform any "corrective action" as defined the Contract. Instead, ICC informed SCP that ICC was unilaterally going to remove a 22,500 square-foot portion of the slab and re-pour the concrete. [Id. at ¶30]. ICC further informed SCP that "ICC did not like the situation, but that ICC was going to pay the costs for the repair of the 22,500 square foot section by 'taking it on the chin.'" [Id. at ¶31]. ICC hired a different concrete mix company to provide the concrete for the re-pour of the 22,500 square foot portion of the slab. [Id. at 33].

Subsequent testing revealed that the slab met all required specifications and that the delamination of the 22,500 square foot area was caused by early finishing of that area by ICC. [Id. at ¶47]. Nevertheless, ICC sent SCP a series of communications asserting that SCP had caused the alleged defect, claiming a breach of warranty related to that alleged problem and demanding payment. [Id. at ¶¶47, 55]. ICC further appears to assert in these communications that SCP is liable for the costs incurred by other entities, including ARCO, as a result of the alleged defect. [Id. at ¶57].

6

With respect to ARCO, SCP alleges "[o]n information and belief" that "ARCO is seeking to recover monies from SCP separate from and in addition to the monies sought by ICC, but based on the same grounds as ICC." [Complaint, Doc. 1-1 at ¶58].

**B.    The City of Shelby Spec Building Project**

The City of Shelby ("City") and ARCO entered into a Construction Contract for the construction of a building on City property (the "City of Shelby Spec Building Project" or "Project"). [Id. at ¶¶60, 61]. ARCO retained ICC to provide concrete for the City of Shelby Spec Building Project under the terms of a subcontract. [Id. at ¶63]. ICC in turn retained SCP to provide the mix design and to mix the concrete need for the City of Shelby Spec Building Project under the terms of a second tier subcontract (the "Shelby Spec Contract"). [Id. at ¶64; Ex. P to Complaint, Doc. 1-3 at 27]. The Shelby Spec Contract provides that ICC will pay $68,382.00 to SCP to provide concrete for the Project. [Complaint, Doc. 1-1 at ¶65; Ex. P to Complaint, Doc. 1-3 at §2.1]. The Shelby Spec Contract also has an arbitration clause identical to the clause in the Clearwater Contract. [See Complaint, Doc. 1-1 at ¶67; Ex. P to Complaint, Doc. 1-3 at §4.9].

SCP mixed, tested, and provided the concrete for the City of Shelby Spec Building Project in June and July 2011 but ICC has refused to pay SCP the amount owed for this work.  [Complaint, Doc. 1-1 at ¶¶69-71].

## IV.   ANALYSIS

In its Complaint, SCP seeks a declaratory judgment pursuant to the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253, *et seq.*, to the effect that SCP has no liability or obligations to either ARCO or ICC regarding the Clear Water Project ("Claim I").  The remaining claims in the Complaint are stated solely against ICC.  In these claims, SCP seeks a declaration that the venue selection provisions set forth within the arbitration clauses in both the Clear Water Contract and the Shelby Spec Contract are void as against public policy ("Claims II and III").  It also asserts a claim for breach of the Shelby Spec Contract ("Claim IV").  [Complaint, Doc. 1-1].

The Defendants move to dismiss the action in its entirety on the grounds that the Plaintiff has failed to state any factual or legal basis for a claim against ARCO and that all of the claims asserted against ICC are subject to binding arbitration.  The Defendants further move to compel the Plaintiff to arbitrate its claims against ICC in accordance with the arbitration provision in the parties' sub-subcontract agreements.  Alternatively, in the event that the

8

action is not dismissed in its entirety, the Defendants request that all surviving claims be stayed pending the completion of binding arbitration. [Doc. 5].

The record reflects that on July 25, 2011, ICC commenced an arbitration proceeding against SCP in St. Louis, Missouri. [See Declaration of Mark T. Keaney, Doc. 9 at ¶4]. SCP moves to stay this arbitration pending the resolution of the Defendants' Motion to Dismiss. [Doc. 10].

## A. Plaintiff's Declaratory Judgment Claim Against ARCO

As noted above, the only claim asserted against ARCO is Claim I, which seeks a declaratory judgment under the North Carolina Uniform Declaratory Judgment Act regarding SCP's potential liability or obligations to the Defendants regarding the Clear Water Project. The Defendants move to dismiss this claim as to ARCO, arguing that SCP has not stated any legal or factual basis for a declaratory judgment action against this Defendant.

The North Carolina Uniform Declaratory Judgment Act (the "Act") grants courts the power to declare the "rights, status, and other legal relations" of parties arising under a contract, including questions regarding its construction or validity. N.C. Gen. Stat. §§ 1-253 and 1-254. "A declaratory judgment should issue (1) when it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from

9

the uncertainty, insecurity and controversy giving rise to the proceeding." Conner v. N.C. Council of State, 365 N.C. 242, 258, 716 S.E.2d 836, 846, *reh'g denied*, 719 S.E.2d 40 (N.C. 2011) (citation omitted). In order for the Court to have jurisdiction over a claim for declaratory judgment, the complaint must demonstrate "the existence of an actual controversy." State ex rel. Utilities Comm'n v. Carolina Water Serv., Inc. of N.C., 149 N.C. App. 656, 658, 562 S.E.2d 60, 62 (2002) (citations omitted). An "actual controversy" is a "'jurisdictional prerequisite" to proceeding under the Act. Gaston Bd. of Realtors, Inc. v. Harrison, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984) (citation omitted). "It is not necessary for one party to have an actual right of action against another for an actual controversy to exist which would support declaratory relief. The Court, however, must "be convinced that the litigation appears to be unavoidable." North Carolina Consumers Power, Inc. v. Duke Power Co., 285 N.C. 434, 450, 206 S.E.2d, 178, 189 (1974).

"It is mandatory that a complaint brought pursuant to the Declaratory Judgment Act set forth all of the facts necessary to disclose the existence of an actual or real existing controversy between the parties to an action." State ex rel. Edmisten v. Tucker, 312 N.C. 326, 339, 323 S.E.2d 294, 303 (1984). If "the complaint does not allege an actual, genuine existing controversy, a

motion for dismissal under ... Rule 12(b)(6) will be granted." Gaston Bd. of Realtors, 311 N.C. at 234-35, 316 S.E.2d at 62.

In the present case, the Complaint contains no plausible factual allegations to support the finding of an actual controversy between SCP and ARCO. To the extent that SCP has any "liabilities and obligations regarding the Clear Water Project," such liabilities and obligations are to be determined pursuant to the provisions of the Clear Water Contract. This Contract is between SCP and ICC only; ARCO is not a party to this agreement, nor is it alleged that ARCO is a third-party beneficiary thereof. Further, while the Complaint alleges that ARCO is the parent company of ICC [see Complaint, Doc. 1-1 at ¶3], the Plaintiff does not assert a cause of action to pierce the corporate veil of ICC and in any event fails to assert any facts to support such a claim.

As general contractor for the Project, ARCO's remedy for any damages caused by the allegedly defective concrete provided by SCP would be through ICC pursuant to the subcontract agreement. The SCP-ICC Contract does not create privity between SCP and ARCO, and therefore ARCO could not recover its losses directly from SCP. See Metric Constructors, Inc. v. Hawker

Siddeley Power Eng'g, Inc., 121 N.C. App. 530, 534, 468 S.E.2d 435, 437-38 (1996).

Even assuming that ARCO could maintain a cause of action against SCP, the Complaint contains no factual allegations to support a finding of an "actual controversy" between ARCO and SCP. SCP cites numerous instances in paragraphs 48 through 54 of the Complaint where it received demands that payment be made to ICC and ARCO. The cited correspondence, however, was generated by ICC; none of the demands made therein were made on behalf of ARCO directly.[2] At best, this correspondence reflects *ICC's* intent to seek payment or otherwise pursue a "claim" against SCP for damages -- damages which include any costs incurred by ARCO as a result of SCP's (and thus ICC's) breach of contract.[3]

For these reasons, the Court concludes that the Complaint fails to show

_____

[2]In its Response Brief, SCP cites to additional documents in order to attempt to demonstrate the existence of an actual controversy between SCP and ARCO. [Doc. 7]. These documents were not referenced or incorporated into the Complaint and therefore are not germane to the issue of whether the Complaint states a claim upon which relief can be granted. As such they will be disregarded.

[3]It is not even clear from the Complaint that ICC intends to pursue litigation against SCP, as the only "claim" that is referenced therein is a potential insurance claim. [See Complaint, Doc. 1-1 at ¶53; Ex. N to Complaint, Doc. 1-3 at 24]. Even if the correspondence cited in the Complaint could be construed as threatening actual litigation, however, "the mere threat of an action or a suit is not enough" to establish an actual controversy. Poole v. Bahamas Sales Assoc., LLC, 705 S.E.2d 13, 18 (N.C. Ct. App. 2011) (quoting Gaston Bd. of Realtors, 311 N.C. at 234, 316 S.E.2d at 62.

12

a controversy sufficient to provide the Court with subject matter jurisdiction over SCP's declaratory judgment claim against ARCO. The Defendants' Motion to Dismiss is therefore granted as to ARCO, and Claim I of the Complaint is hereby dismissed as to this Defendant.

**B.    Plaintiff's Claims Against ICC**

The remaining claims in the Complaint are against the Defendant ICC only. ICC moves to dismiss these claims on the grounds that they are subject to mandatory arbitration pursuant to the parties' agreements.

The Federal Arbitration Act (FAA) provides that any written provision to resolve by arbitration a controversy arising pursuant to a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "As a result of this federal policy favoring arbitration, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (emphasis omitted) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74

13

L.Ed.2d 765, 785 (1983)).  The language of the statute is clear; arbitration must be compelled if the parties have entered into a valid arbitration agreement and the dispute falls within the scope thereof.  Id.

In determining whether the dispute at issue is one which should be resolved though arbitration, this Court "engage[s] in a limited review to ensure that the dispute is arbitrable -- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  Murray v. United Food and Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002).

In its Complaint, SCP seeks a declaration that the venue selection provisions of the arbitration clauses violate § 22B-2 of the North Carolina General Statutes and are therefore void as against public policy.  [Complaint, Doc. 1-1 at ¶¶84-95].  Section 22B-2 provides as follows:

> A provision in any contract, subcontract, or purchase order for the improvement of real property in this State, or the providing of materials therefor, is void and against public policy if it makes the contract, subcontract, or purchase order subject to the laws of another state, or provides that the exclusive forum for any litigation, arbitration, or other dispute resolution process is located in another state.

N.C. Gen. Stat. § 22B-2.

14

Section 2 of the FAA broadly mandates the enforcement of arbitration agreements, including forum selection clauses. See Elox Corp. v. Colt Indus., Inc., No. 90-2456, 1991 WL 263127, at *1 (4th Cir. Dec. 16, 1991) (as corrected Jan. 7, 1992) ("The [FAA] provides that a district court ... shall defer to the terms of the parties' agreement. The district court must, therefore, apply a forum selection clause contained in the agreement if such a clause exists."). A "forum selection clause must be enforced unless there are legal or equitable grounds sufficient to revoke the agreement." Aspen Spa Props., LLC v. Int'l Design Concepts, LLC, 527 F.Supp.2d 469, 473 (E.D.N.C. 2007). Only "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

As applied to arbitration agreements, N.C. Gen. Stat. § 22B-2 directly conflicts with § 2 of the FAA. As the District Court for the Eastern District of North Carolina recently explained:

> N.C. Gen. Stat. § 22B-2 ... is not the kind of generally applicable contract defense that operates to revoke any agreement. The statute operates to invalidate only a few types of contractual provisions in a narrow subset of agreements: forum selection clauses, choice of law clauses, and arbitration agreements in

contracts for the improvement of real property and for the provision of materials for real property located in North Carolina. The statute, in practice, singles out some but not all arbitration agreements; it does not apply generally to all contracts and all contractual provisions like the doctrines of fraud, coercion, and lack of consideration do. On these facts, North Carolina's statute cannot serve as a legal basis to revoke the parties' arbitration agreements.

Wake County Bd. of Educ. v. Dow Roofing Systems, LLC, 792 F.Supp.2d 897, 902 (E.D.N.C. 2011). The Court finds the reasoning of the Eastern District of North Carolina to be persuasive. Accordingly, the Court concludes that N.C. Gen. Stat. § 22B-2 conflicts with the FAA and is therefore preempted by the Federal statute. Section 22B-2 cannot serve as a basis to revoke the arbitration clauses in the parties' agreements. Under § 2 of the FAA, the parties' arbitration agreements must be enforced as written. The declaratory judgment claims set forth in Claims II and III of the Complaint are therefore dismissed.

SCP contends that arbitration of this matter is not appropriate because the arbitration is being pursued by ARCO and not ICC. SCP's primary contention in support of this theory is that a portion of the damages sought by ICC in the arbitration reflect costs incurred by ARCO. ICC readily admits that the damages it seeks in arbitration include costs incurred by ICC for corrective

16

actions it performed as well as amounts paid by ARCO for which ICC remains liable to ARCO, all of which arise directly out of SCP's alleged breach of the Clear Water Contract with ICC. [Doc. 8 at 3]. SCP fails, however, to provide any legal basis to support its assertion that ICC cannot properly claim, as a portion of its damages, the liability ICC has to ARCO for breach of contract as a direct result of SCP's breach of its subcontract with ICC, or that by claiming such damages, ARCO replaces ICC as the real party in interest in the arbitration proceeding. In any event, the determination of the damages recoverable by a party to a subcontract is a matter of contract interpretation, not an issue of arbitrability to be determined by the Court. See generally Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

The language of the arbitration clauses in the parties' contracts clearly show that all disputes between the parties are to be submitted to arbitration, and the claims asserted in the Complaint fall within that broad scope. The Court therefore finds and concludes that the parties entered into valid and binding agreements to arbitrate and that the disputes at issue fall within the scope of those agreements.

ICC moves the Court to compel SCP to arbitrate such claims in "the city or county of St. Louis," the form identified in the arbitration clauses. On this point, the FAA provides, in pertinent part, as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement .... [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed ....

9 U.S.C. § 4. The majority of courts which have addressed the issue have held "that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4." Ansari v. Qwest Communications Corp., 414 F.3d 1214, 1219-20 (10th Cir. 2005); Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1018 (6th Cir. 2003); Mgmt. Recruiters Int'l, Inc. v. Bloor, 129 F.3d 851, 854 (6th Cir. 1997); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995); Snyder v. Smith, 736 F.2d 409, 420 (7th Cir. 1984), *overruled on other grounds by* Felzen v. Andreas, 134 F.3d 873 (7th Cir.

1998); <u>American Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.</u>, 628

F.Supp.2d 674, 683 (E.D. Va. 2009); <u>Sea Spray Holdings, Ltd. v. Pali Fin.</u>

<u>Group, Inc.</u>, 269 F.Supp.2d 356, 363 (S.D.N.Y. 2003); <u>Roe v. Gray</u>, 165

F.Supp.2d 1164, 1173 (D. Colo. 2001). These courts have reasoned that

"[a]ny other result renders meaningless the § 4 mandate that arbitration and

the order compelling arbitration issue from the same district." <u>Mgmt.</u>

<u>Recruiters Int'l</u>, 129 F.3d at 854. As the Tenth Circuit explained:

> The prohibition on extrinsic orders affecting arbitration
> ... is clear both from the language of § 4 itself,
> prescribing a geographic nexus between the
> arbitration and the court issuing an order to compel,
> and the case law which has interpreted this as a
> directive to courts to abstain from controlling
> intervention in arbitration proceedings outside their
> district.

<u>Ansari</u>, 414 F.3d at 1220 (quoting <u>Merrill Lynch</u>, 49 F.3d at 329).[4]

---

[4]While the Fourth Circuit has yet to decide the issue, it has implied that it would follow the majority approach if squarely presented with the issue:

> The [FAA] provides that a district court deciding a motion to compel arbitration shall defer to the terms of the parties agreement. The district court must, therefore, apply a forum selection clause contained in the agreement if such a clause exists. Further, if a court orders arbitration, *the arbitration must be held in the same district as the court.*

<u>Elox Corp.</u>, 1991 WL 263127, at *1 (internal citations omitted; emphasis added).

19

The Court finds the reasoning of these courts to be persuasive and therefore adopts the majority view that a district court lacks authority under § 4 of the FAA to compel arbitration outside of its geographic jurisdiction. Accordingly, the Defendants' motion to compel SCP to arbitrate its claims in the St. Louis, Missouri arbitration is denied. In light of the Court's lack of jurisdiction to intervene in arbitration proceedings outside of this judicial district, the Plaintiff's motion to stay the St. Louis arbitration proceedings is also denied.

Because SCP's claims are subject to binding arbitration, ICC argues that this action should be dismissed. Section 3 of the FAA, however, provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  In light of the ongoing arbitration in St. Louis, the Court will stay

the present action pending the outcome of those proceedings.  The Motion to

Dismiss the Plaintiff's remaining claims against ICC is therefore denied.

## **O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendants'

Motion to Dismiss or Stay and Compel Arbitration [Doc. 5] is **GRANTED IN**

**PART** and **DENIED IN PART** as follows:

(1)     The Motion to Dismiss the Plaintiff's claim against the Defendant

ARCO Design/Build, Inc. is **GRANTED**, and Claim I is

**DISMISSED** with respect to Defendant ARCO Design/Build, Inc.

only;

(2)     The Motion to Dismiss the Plaintiff's claims against the Defendant

Industrial Concrete Construction, Inc. is **GRANTED** with respect

to Claims II and III, and Claims II and III are hereby **DISMISSED**.

The Motion to Dismiss the Plaintiff's claims against the Defendant

Industrial Concrete Construction, Inc. is **DENIED** with respect to

Claims I and IV;

(3)     The Motion to Compel Arbitration is **DENIED**; and

(4)     The Defendants' Motion to Stay this action is **GRANTED**, and this matter is hereby stayed pending the resolution of the parties' arbitration in St. Louis, Missouri.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Stay Arbitration [Doc. 10] is **DENIED**.

**IT IS SO ORDERED.**

Signed: March 29, 2012

Martin Reidinger
United States District Judge